**SO ORDERED.**

**SIGNED April 29, 2005.**



_____
HENLEY A. HUNTER
UNITED STATES BANKRUPTCY JUDGE

_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

IN RE:                                                           CASE NO: 03-32932
    DANIEL ELDRIDGE CHASON
        (Debtor)

CONTROL SERVICES, INC.
        (Plaintiff)

VERSUS

                                                             ADVERSARY NO: 04-3014

DANIEL ELDRIDGE CHASON
        (Defendant)

**REASONS FOR DECISION**

      This matter comes before the Court on the Complaint of the Plaintiff objecting to the discharge and the defendant's Motion to Dismiss. This is a Core Proceeding pursuant to 28 U.S.C. § 157(b)(2)(J). This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and by virtue of the reference by the District Court pursuant to Local District Court Rule 83.41.1, incorporated into Local Bankruptcy Rule 9029.3. No party at interest has sought to withdraw the reference to the bankruptcy court, nor has the District Court done so on its own motion. This Court makes the

following findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. Pursuant to these reasons, there will be judgment in favor of the defendant.

**FINDINGS OF FACT**

Debtor filed a voluntary petition under Chapter 7 on November 20, 2003. The First Meeting of Creditors (§341 Meeting) was held on January 20, 2004, and the record of the Court indicates that all parties were present, including counsel to the plaintiff. (Doc. 7, Case no. 03-32932.) The case proceeded uninterrupted until March 22, 2004, when plaintiff filed the instant complaint to deny the discharge. No action was filed by the Chapter 7 Trustee.

Plaintiff filed the initial complaint, making the following allegations:

5.
This Creditor contends that the debtor failed to testify truthfully to the United States Trustee concerning certain matters about which he was questioned at the referenced §341 meeting.
6.
Further, this Creditor contends that the debtor failed to truthfully complete his bankruptcy schedules concerning his assets, liabilities, and other relevant data in the bankruptcy schedules previously filed with this Court.
7.
Furthermore, this Creditor contends that the debtor did not truthfully disclose all information necessary to properly complete the Statement of Financial Affairs previously filed in this matter.
8.
This Creditor shows that debtor has rendered false statements or oaths in connection with this bankruptcy case which are sufficient to justify the denial of his discharge pursuant to 11 U.S.C. §727.
9.
Also, this Creditor avers that this debtor has failed to explain satisfactorily, before determination of denial of his discharge, the loss of assets or deficiency of assets with which to meet his liabilities.
10.
Additionally, this Creditor avers that because of the foregoing deficiencies in the debtor's prior filings and testimony, the debtor has failed to obey orders of this Court as required by law.

In short, it can only be derived from this complaint that the debtor is alleged to have lied

2

about something at some point in both his §341 testimony and his schedules. A joint pre-trial statement was filed after the pre-trial conference, wherein the plaintiff's allegations from the complaint were merely repeated, and not expounded upon in any detail whatsoever. (Doc. 7.) Defendant noted therein that the allegations in the complaint and as noted in the pre-trial statement, contain no details that could be addressed or refuted, and stated that the defendant claims he testified truthfully at the §341 meeting. (Doc. 7.)

An answer was filed on July 27, 2004, wherein the defendant denied the foregoing allegations, and in the answer requested the Complaint be dismissed, but did not notice out a hearing on a Motion to Dismiss.

Despite the time constraints listed in the pre-trial order, no motions were timely filed seeking either a more particular statement (F.R.C.P. 12(e), F.R.B.P 7012(b)) or a dismissal under F.R.C.P. 12(b)(6)/F.R.B.P. 7012(b). The Court also notes that the parties stipulate that no discovery was initiated, other than interrogatories propounded by the defendant, to which counsel to plaintiff responded with only a copy of the certificate of title held by the plaintiff, even up to the eve of trial, despite the fact that the plaintiff sought and was granted an extension of time within which to conduct discovery. Counsel to the plaintiff specifically admitted he did not take any depositions or a Rule 2004 examination of the debtor or any other entity.

After several continuances of the trial date, an order was entered fixing the trial for April 7, 2005, and stated that there would be no further continuances of this matter. Approaching the eve of trial, on March 30, 2005, defendant filed a Motion to Dismiss pursuant to Rule 12(b)(6), stating: "[the] complaint avers no facts which would be sufficient to even put Chason on notice as to the actual gravamen of the complaint being urged, such that Chason is unable to either respond

3

properly to the complaint or to prepare for trial of same." (Doc. 16.) Because the Motion was not filed within the period allowed for dispositive motions, and so close to the trial date, the ruling on this motion was referred to the conclusion of the trial.

No opposition to the Motion to Dismiss was filed until the time of trial on April 7, 2005. Plaintiff then opposed the motion, based on its untimeliness. The Court finds this argument disingenuous at best. Clearly, counsel to the plaintiff, while leaping to the timeliness issue regarding the defendant's motion, by his own admission did not adhere to the time constraints imposed by the pre-trial Order. As shall be shown, only at trial, and not five days prior to the trial as specified in the Oder from Pre-trial Conference, was a Joint Pre-Trial Stipulation filed, which included the list of witnesses and exhibits.[1]

## LAW AND ANALYSIS

**Timeliness of the Motion to Dismiss**

Defendant filed the Motion to Dismiss under F.R.C.P. 12(b)(6) on March 30, 2005, on the basis that the complaint failed to state anything more then conclusory allegations of law rather than specific facts. Although the defendant can assert that its Motion to Dismiss was made in the answer filed on July 27, 2004, it is also well settled that an untimely Motion to Dismiss under F.R.C.P. 12(b)(6), (i.e., one filed after the answer or close of pleadings), should be considered by the Court a Motion for Judgment on the Pleadings, under F.R.C.P. 12(c). *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312-13 (5th Cir. 12/9/2002); *Jones v. Greninger*, 188 F.3d 322 (5th Cir. 9/17/1999); *In re: Dann Marine Towing, LC*, 2004 WL 744881 (E.D.La.

---

[1] Counsel to plaintiff and debtor signed the pre-trial statement in the courthouse on the afternoon prior to the trial.

4

4/6/2004)(Not Reported in F.Supp.2d.). Accordingly, this Court finds the Motion to Dismiss should be considered a Motion for Judgment on the Pleadings.

**Merits of the Motion under F.R.C.P. 12(c)**

Federal Rule of Civil Procedure 12(c) provides: "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." "A motion brought pursuant to Fed.R.Civ.P. 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir.1990) (per curiam) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1367, at 509-10 (1990)). "[T]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Hughes*, 278 F.3d at 420 (*quoting St. Paul Mercury Ins. Co.*, 224 F.3d at 440 n. 8). "Pleadings should be construed liberally, and judgment on the pleadings is appropriate only if there are no disputed issues of fact and only questions of law remain." *Id.*, (*citing Voest-Alpine Trading USA Corp. v. Bank of China*, 142 F.3d 887, 891 (5th Cir.1998)). A court may dismiss a claim when it is clear that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson,* 355 U,S. 41, 45 (1957); *Jones*, 188 F.3d at. 324.

"In analyzing the complaint, [the court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id*., (*citing Doe v. Hillsboro Indep. Sch. Dist*., 81 F.3d 1395, 1401 (5th Cir.1996)). [The Court] will not, however, "accept as true conclusory allegations or unwarranted deductions of fact." *Jones*, 188 F.3d at. 324 (citations omitted).

The language in the complaint simply tracks that which is contained in §727(a)(4),(5), and

(6).² The Fifth Circuit has clearly set out the test and burden of proof in a §727(a)(4) adversary proceeding. *Matter of Beaubouef*, 966 F.2d 174 (5th Cir. 1992). The elements of a "false oath" under §727(a)(4)(A) are:

(1) The debtor made a statement under oath, which includes schedules and examinations in a bankruptcy case;
(2) the statement was false;
(3) the debtor knew that the statement was false;
(4) the statement was made with fraudulent intent; and
(5) the statement related materially to the bankruptcy case.

*Id*. at 178. The elements of an objection to discharge under §727(a)(4)(A) must be proven by preponderance of the evidence. *Id*. at 178, *citing Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654 (1991). As for the reference to §727(a)(5), only if the plaintiff meets its burden in showing the debtor failed to explain the loss of assets, the test is whether the Court is satisfied with the debtor's explanation. *In re Reason*, 255 B.R. 829 (Bankr.W.D.La. 2000); *In re Farouki*, 133 B.R. 769, 777 (Bankr.E.D.Va. 1991), *aff'd* 14 F.3d 244, 251 (4th Cir. 1994); *In re Chalik*, 748 F.2d 616, 619 (11th Cir. 1984).

Allegations of fraud must be made with particularity. F.R.C.P. 9(b), made applicable to Adversary Proceedings in bankruptcy by F.R.B.P. 7009. In *In Re Damrill* 232 B.R. 767 (Bankr. W.D. Mo. 1999). Bankruptcy courts have enforced the specificity requirement of Rule 9 in adversary proceedings challenging the discharge, despite otherwise "relaxed" standards permitting fact pleading. *In re Rifkin*, 142 B.R. 61 (Bankr.E.D.N.Y.1992); *See also In re Perez*, 173 B.R. 284 (Bankr.E.D.N.Y. 1994); *In re Rosen*, 151 B.R. 648 (Bankr.E.D.N.Y. 1993).

The test of whether a complaint meets the specificity requirement of Rule 9 is whether the

---

²Plaintiff never even attempted to support an allegation under §727(a)(6) at trial, thus, this allegation was abandoned.

pleading gives fair notice of claims asserted and adequate information to the defendant in order to frame a response. *Gilmer v. Buena Vista Home Video, Inc*., 939 F.Supp. 665 (W.D.Ark. 1996); *Harvey M. Jasper Retirement Trust v. Ivax Corp*., 920 F.Supp. 1260 (S.D.Fla. 1995). Rule 9 could be deemed satisfied if the complaint alleges precisely what statements or omission were made, place and person responsible for those statements, the content of the statements and the effect on the plaintiff. *Official Publications, Inc. v. Kable News Co., Inc*., 775 F.Supp. 631 (S.D.N.Y. 1991). Another purpose of Rule 9 is not only to provide notice adequate to prepare a defense, but also to protect against complaints that are a pretext for discovery of unknown wrongs or are otherwise groundless attempts to coerce settlement out of defendants who wish to avoid litigation. *Pittiglio v. Michigan Nat. Corp*., 906 F.Supp. 1145 (E.D.Mich. 1995).

This Court finds the following legal analysis by the bankruptcy Court for the Southern District of Ohio applicable herein and hereby adopts this synopsis:

> Where a complaint involves an exception to or a denial of the discharge based on the fraudulent conduct of the debtor, the courts have liberally applied and interpreted the pleading rules, particularly where a trustee, a third party, "is pleading fraud on secondhand information." *Hassett v. Zimmerman* (*In re O.P.M. Leasing Services, Inc*.), 32 B.R. 199, 202 (Bankr.S.D.N.Y. 1983). Even in those situations, however, the requirement of specificity in pleading "the acts constituting fraud" is demanded. *Id. See also Wolfson v. Sriberg (In re Sriberg)*, 49 B.R. 80,81 (Bankr.D.Mass. 1984); *Weick v. Heitzel (In re Metro Equipment & Rental Corp.)*, 28 B.R. 579, 582 (Bankr.N.D.Ohio 1983)."
> 
> [The Courts] "have insisted on more than broad assertions, mere conclusions, and repetition of statute. They have insisted that the complaint state with particularity the underlying facts and the wrong alleged so that the broad policy of the federal rules to fairly apprize parties of the complaint against them in sufficient detail to allow them to adequately answer and prepare their defense is ensured."
> 
> In cases where the plaintiff is not a third party trustee, but an actual participant in the transaction and theoretically has direct knowledge of the factual underpinnings of any claimed fraud, bankruptcy courts have consistently required compliance with these standards. It is necessary "to set forth the basic outline of fraud and to indicate who made the representations and the time and place the representations were made." *Purcell v. Janikowski (in re Janikowski)*, 60 B.R. 784,

7

> 14 B.C.D. 521, 525 (Bankr.N.D.Ill.1986). Bankruptcy Courts have demanded that factual basis supporting the allegation of fraud be stated with particularity, Bunch v. Kerr (In re Kerr), 58 B.R. 171, 173 (Bankr.E.D.Ark.1985), ***by identifying those representations alleged to be false***, *Lionel Corporation v. Wetterau Incorporated (In re Lionel Corporation)*, 41 B.R. 804, 805 (Bankr.S.D.N.Y.1984).
>> "This specificity is particularly critical when the fraud of misrepresentation is not demonstrated by tangible evidence such as statements signed by the parties or other documents related to the transaction in question."

*Huntington National Bank v. Schwartzman (In re Schwartzman)*, 63 B.R. 348, 355 (Bankr.S.D.Ohio1986)(emphasis supplied).

In this case, there are simply *no* facts alleged in these pleadings. Up to the day of trial, the plaintiff never set forth what the debtor said or didn't say in his testimony, what specifically he is to have lied about, and how this alleged lie materially affected the creditor. There is no way that the defendant, in answering that testified truthfully at the §341 meeting and in his schedules, could have known what witnesses or evidence to bring forth in his defense. This type of attack on the discharge can best be labeled a "the debtor must have lied about something, somewhere, at some time" attack.

"Denial of discharge is reserved for the truly pernicious debtor. Only where there is a preconceived scheme to thwart the rights of creditors and the process of this court, or such a cavalier disregard of duty as to constitute the legal equivalent of those motives, is the discharge withheld." *In re Brame,* 23 B.R. 196, 200 (Bankr. W.D. Ky. 1982). The Court realizes there are debtors whose conduct toward creditors in the context of the bankruptcy system is worthy of scrutiny, but only at the prompting of a well-pled complaint filed in good faith by counsel to the creditor, and one that comports with the Federal Rules of Civil Procedure.

This Court has repeatedly cautioned this counsel for plaintiff that it cannot condone this type

8

of conduct.[3] Neither the Federal Rules of Civil Procedure nor the Federal Rules of Bankruptcy Procedures allow for trial by ambush. For this reason, the Court concludes it was remiss in failing to grant the Defendant's Motion to Dismiss. Thus, the plaintiff should not have been afforded the opportunity to adduce *any* evidence in support of its complaint, given its failure to comply with either the basic rules of pleading under F.R.C.P. 8 or the specificity requirements under F.R.C.P. 9.

**Going Beyond the Motion to Dismiss**

However, because the Court mistakenly allowed the presentation of the plaintiff's case, it will address same ***solely*** for the purpose of completing the record, noting the following observations are made alternatively in the form of a Report and Recommendation in the event of an appellate *de novo* review. At this trial, plaintiff sought to attack the discharge by first asserting that omitted a debt owed to a former business partner, and in that dialogue with plaintiff's counsel, referred to the receipt of $2,000 in unscheduled income in December of 2003. Second, debtor acknowledged selling a piece of equipment (Polaris ATV) within one year prior to the bankruptcy.

---

[3] *See Friendly Finance Discount Corp. v. Burnett,* 04-3038 (Order to Show Cause why the case should not be dismissed on the pleadings)(2005); *Friendly Finance Discount Corp. v. Robinson*, 99-3036 (Reasons for Decision)(2001); *Friendly Finance Service Mid-City, Inc. v. Winn*, 00-3032 (Reasons for Decision)(2001). These matters represent only a few of the warnings from the Court to plaintiff's counsel with respect to the insufficiency of his pleadings. Some warnings took place in the context of pre-trial conferences, to no avail. Others do not reach the trial stage or findings of fact and conclusions of law are entered orally. In the latest cited example, *Burnett*, (04-3038), the adversary proceeding remained on this Court's docket for over eighteen months. That complaint, replete with spelling errors and allegations made solely on information and belief, sought to have a debt deemed non-dischargeable under 11 U.S.C. §523(a)(6) for willful and malicious conduct that occurred post-filing. Unfortunately, we fail to discern any improvement in counsel's pleadings. In calendar year 2004, alone, sixty-eight adversary proceedings were filed in the Monroe Division. Thirty were instituted by trustees. Of the remaining thirty-eight, eight were filed by this plaintiff's counsel on behalf of a creditor. The cost in the currency of Court time and resources is the backlogging of available trial dates in the Monroe division for up to one year from the pre-trial conference.

9

Plaintiff avers that Chason admits selling an ATV three weeks before filing his petition and selling a utility trailer some time previously.[4] The defendant's ex-wife produced the title to the ATV at the trial. She stated she last saw both the ATV and the trailer in his possession during the hunting season of 2003. The document produced by Chason (Exhibit P-3) shows a sale of the ATV to an unnamed purchaser by private sale. Plaintiff's counsel attaches great significance to the fact that the bill of sale was purportedly executed in Richland Parish, has no serial number, and no notary signed the same. Chason's explanation for this is that the purchaser used the item at a private hunting lodge and did not need a title. The price and date shown in the document are consistent with Chason's testimony. As to omission of the sale documents, this Court concurs with this characterization of the debtor's testimony regarding these transactions:

> The defendant was confronted with vehicle title certificates to an all terrain vehicle and a utility [trailer]. Testimony established that these titles had been in the possession of defendant's ex-wife. Defendant testified that he sold both of these items prior to filing-one over a year before and the other some months prefiling. This testimony is uncontradicted."

Defendant's Post-Trial Memorandum, page 3.

While nothing in debtor's schedules refers to these sales, debtor did amend the schedules twice prior to the §341 Meeting to add additional creditors and to list his membership in 3 Rivers Lodge, LLC, and other personal property. (Doc. nos. 6, 8.) Counsel to debtor repeatedly objected to the introduction of evidence tending to enlarge the pleadings and proffered evidence was presented subject to the sustained objections. Plaintiff's complaint alleges not only that the debtor

---

[4]Defendant propounded interrogatories and requests for admissions to the plaintiff on July 19, 2004, seeking *inter alia* to determine what plaintiff's allegations of the loss of assets or deficiency of assets to meet liabilities referred to and for plaintiff to produce copies of any document the plaintiff intended to offer at trial. Despite several extensions of the discovery period, plaintiff only answered interrogatories by referring to "Copies of title certificates of the vehicles the debtor failed to disclose in his bankruptcy schedules," and attaching same.

10

made a false oath in the schedules but also that debtor failed to explain the loss of assets to meet his liabilities, however, the defendant's explanations were made at the §341 Meeting, repeated at trial, and were entirely plausible. Given that Chason was engaged in various enterprises relating to hunting, this Court is satisfied in that it cannot say that his explanation lacks credibility.

Turning next to Chason's receipt of $2,000 in December of 2003, this Court would find that plaintiff did not prove under §727(a)(4)(A) that the omission was made with fraudulent intent or that the statement related materially to the bankruptcy case.[5] Debtor filed an amended schedule on February 17, 2005, listing an interest in Three Rivers Lodge, LLC, with no market value. This matter was explored at the §341 meeting on January 20, 2004.[6] At that hearing, Chason testified this hunting business, located in Arkansas, was "$170,000.00 in the hole."[7] Chason testified he was reimbursed by the members of the LLC for funds he had advanced for items for the lodge. At one point, he stated the amount due was $200.00, which had been reimbursed in December of 2003, another amount was yet due in the range of $1,750 to $2,000, yet unpaid. (Transcript page 12-13). Chason also testified that he had received a $2,000 payment, rather a gift, from an entity known as Logansport Gaming, owned by a principal of Three Rivers, on December 7 or 8, 2003. At trial, Chason echoed the explanation given at the creditor's meeting. Chason actually amended his petition prior to the §341 meeting and freely acknowledged the payment from Logansport Gaming at that meeting. The explanations offered at trial are not different from those offered at the §341

---

[5] Although plaintiff's counsel virtually fulminated over this receipt at trial, it's post trial memorandum is silent on the point, leading the Court to conclude the contention may have been abandoned.

[6] The transcript of the meeting was not available at the trial. The record was left open for it to be filed. See Exhibit P-4.

[7] Exhibit P-4, page 5.

11

meeting.

Regarding the alleged omission of a debt to his former business partner, a Mr. Jackie Howard, it is at this point that the nascent innuendo and intimations of scurrilous conduct on debtor's behalf belabored ad nauseam in the presentation of plaintiff's case came into full bloom. Mr. Howard testified that he and debtor formed a business to film and market short television spots related to hunting and fishing, called "Outdoor Review." Mr. Howard contributed $5,000 and debtor contributed the "know how." This ill-fated venture resulted in a number of films, none of which were ever marketed. Because Howard wanted no papers to establish the existence *vel non* of the enterprise, none exist; a handshake being sufficient evidence of their agreement. Indeed, Howard testified that he had not a shred of evidence that he even funded the operation, but considering his contribution, Chason promised to "make it right." The plaintiff attempted to establish the debtor's deliberate omission of the debt to Howard by having Mrs. Chason relate a conversation containing such an admission by the debtor, but when pressed, she was uncertain whether such conversation ever took place. She simply acknowledged learning of a payment by Chason to Howard post-petition.[8]

At the end of the day, plaintiff simply cannot prevail. Plaintiff's counsel admitted he conducted no formal discovery (and seemingly little informal discovery) as every bit of evidence adduced was "discovered" at trial by questioning the debtor or other witnesses. Defendant made a general and several specific objections to the enlargement of the pleadings, which were sustained.

---

[8] The Court declined to permit plaintiff's counsel to make a proffer relating to some event that apparently soured the relationship between Howard and debtor. Trial was not the appropriate time to go on a fishing expedition regarding such conduct, which is certainly not a subject of the pleadings.

Defendant also moved for judgment on partial findings at the conclusion of plaintiff's case, made applicable in adversary proceedings in bankruptcy pursuant to F.R.B.P. 7052. This Court acknowledges it was remiss in failing to grant the Motion to Dismiss at the outset, or even the motion for judgment on partial findings for plaintiff's failure to satisfy the elements of the "false oath" objection by a preponderance of the evidence.

No evidence of materiality or intent to defraud was presented, which, as indicated above, are not merely ornamental elements of a "false oath" objection to the discharge under §727(a)(4)(A). The most serious charge mounted against debtor is the omission of the sales of the ATV and trailer, but given debtor's explanations, this single omission simply does not rise to the level of "reckless indifference to the truth." Indeed, it would seem that the only reckless indifference here was demonstrated by plaintiff's counsel, whose continued obstinate refusal to comply with the Federal Rules of Civil Procedure is intolerable.

## CONCLUSION

Thus, the Motion to Dismiss or Motion under F.R.C.P. 12(c) should have been granted in favor of the defendant for failure of the plaintiff to satisfy the elements of the "false oath" objection by a preponderance of the evidence. In accordance with these reasons, the defendant's Motion to Dismiss the complaint to deny a discharge, which the Court construes as a Motion for Judgment on the Pleadings under F.R.C.P. 12(c), is **GRANTED with prejudice**. A separate conforming order will be entered.

# # #